IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN
AND FOR SARASOTA COUNTY, FLORIDA

IN RE: THE MARRIAGE OF

ASHLEY D. KOZEL,
    Petitioner/Former Wife,
and

TODD KOZEL,
    Respondent/Former Husband.
_____/

FAMILY DIVISION

Case No.: 2010DR8976NC

## FORMER HUSBAND'S VERIFIED MOTION TO SUPPLEMENT RECORD OF EVIDENTIARY HEARING ON APRIL 5 & 6, 2016

**The Former Husband/TODD KOZEL**, by and through undersigned counsel, hereby files this his *Verified Motion to Supplement Record of Evidentiary Hearing on April 5 & 6, 2016*, and states as follows:

1. On April 5 & 6, 2016, this Honorable Court conducted an evidentiary hearing on the Former Husband's "Stay" Motions and the Former Wife's "Contempt" Motions.

2. Prior to the commencement of the proceedings, on April 5, 2016, in accord with his continuing obligation to provide financial disclosure to the Former Wife, the Former Husband provided his FBAR's in response to with the Former Wife's Request to Produce dated August 18, 2015. The FBAR's and the Former Husband's Supplemental Response to Former Wife's Request to Produce was marked as **Former Wife's Exhibit "13"** in evidence.

3. In relevant part, the FBAR's indicated that the highest balance in the Former Husband's Credit Agricole Account were as follows:

In Re: The Former Marriage of Ashley D. Kozel & Todd Kozel
Sarasota County Case No. 2010DR8976NC
Page 2

      a.    $65,819,612 on or about February 27, 2012.

      b.    $30,291,030 on or about March 5, 2013.

4.    However, according to the FBAR's, these "high" balances in 2012 and 2013 existed for only a one-month period.

5.    When questioned by the Former Wife's counsel regarding the "cash" in these accounts, the Former Husband testified that he did not believe he ever had the above-cited amounts of "cash" in his Credit Agricole account (#3271); however, there is a brokerage account also associated with this Credit Agricole account and he speculated that the high "values" for said one month period was likely due to GKP Stock. See **Exhibit "A"**, excerpt of Transcript of April 6, 2016 (p. 359, line 2 – p. 363 line 9, p. 365, lines 20-22).

6.    Former Wife's counsel asked Former Husband the following questions which the Former Husband was unable to conclusively answer at the time of the hearing:

      a.    *So you wouldn't happen to have with you the records that show where the $65 million went, would you?*

           See **Exhibit "A"**, excerpt Transcript of April 6, 2016 (p. 361, lines 8-10)

      b.    *Did that $65 million come from the sale of GKP stock that was subject to an asset injunction?*

           See **Exhibit "A"**, excerpt Transcript of April 6, 2016 (p. 365, lines 7-8)

      c.    *And where'd the $30 million go from 2013?*

See **Exhibit "A"**, excerpt Transcript of April 6, 2016 (p. 366, line 1)

7. Despite these answers, the Former Wife argued to the Court that there was undisclosed and/or missing cash available to pay $3,850,000 per the 2012 & 2013 FBAR's.

8. Subsequent to the hearing, Former Husband conclusively researched the answer to the questions posed regarding the assets represented on his 2012 & 2013 FBARS and contained in his Credit Agricole Account on or about February 27, 2012 and March 5, 2013 and determined:

    a. **February 27, 2012:** The vast majority of the approximately $65,000,000 USD value as contained on the Former Husband's FBAR for 2012 represented the value of 11,600,000 shares of GKP stock (at a then fair market value of approximately 357 pence/share) which shares/assets were transferred to the Former Wife in accord with the parties' Property Settlement Agreement ("PSA"), on or about March 1, 2012. **See Composite Exhibit "B"**. This transfer of shares is well-known to both the Former Wife and the Court as it is fully described in this Court's Amended Final Judgment (dated 9/11/15), Stipulated Facts, p. 2, ¶1(b), and often referred to as the as the fourth tranche of shares. The 11,600,000 shares derived from a re-issuance of a lost share certificate, which were transferred to the Husband's Credit Agricole Account after being re-issued and then immediately (within days) transferred to the Former Wife.  See also **Exhibit "C"**, GKP Public Announcement dated January 17, 2012.

b.  **March 5/6, 2013**: The vast majority of approximately $32,000,000 USD value as contained in the Former Husband's FBAR for 2013 represented the value of 10,000,000 shares of GKP stock (at a then fair market value of approximately 196 pence/share), which shares were transferred from GKP to the Former Husband's Credit Agricole account and almost immediately transferred to Bader Al Qabandi to repay him for the shares borrowed[1] by the Former Husband to pay the Former Wife the third tranche of shares on or about February 21, 2012 as described by the Court's Amended Final Judgment (dated 9/11/15), Stipulated Facts, p. 2, ¶1(b). See **Composite Exhibit "D"** (the Credit Agricole Securities Remittances demonstrating the deposit of GKP shares into the Former Husband's account and then the withdrawal of the shares, was previously produced to the Former Wife as part of Former Husband's First Supplemental Response to Former Wife's List of Missing Documents (Dated October 30, 2015)(dated 1/11/16). Additionally, this transfer was publicly announced and also previously provided to the Former Wife in financial disclosure (See Former Husband's Response to Former Wife's List of Missing Documents (Dated October 30, 2015)) introduced into evidence as **Former Wife's Exhibit "7"** and **Exhibit "I"** attached hereto.

8.  The Former Wife's argument that $65,000,000 or $30,000,000 was all 'CASH' and is either a missing or hidden assets or represented shares of stock

---

[1] The shares had decreased in value so to pay back the loan, a greater number of shares needed to be transferred along with interest.

traded in violation of the Third Amended Asset Injunction is inaccurate and misleading.

    A.    As stated above, the $65,000,000 (on the 2012 FBARS) represents GKP shares re-issued and then transferred previously to the Former Wife in the fourth tranche as part of her equitable distribution equalizing payment and was never funds or asset used or "traded" by the Former Husband in violation of the Third Amended Asset Injunction. This transfer to the Former Wife was also publicly announced. See **Exhibit "C"**, GKP Public Announcement dated January 17, 2012.

    B.    The approximately $30,000,000 (on the 2013 FBARS) represents GKP shares which were acquired by way of Bonus Shares (See **Exhibit "E"**, GKP Public Announcement dated February 26, 2013) transferred by GKP to the Former Husband's Credit Agricole Account (See **Exhibit "F"**, GKP Public Announcement dated February 28, 2013) and exercising some of his GKP Options. Some of these shares were sold (See **Exhibit "G"**, GKP Public Announcement dated March 1, 2013; however, the majority of these shares (10,000,000 shares) were transferred to Mr. Al Qabandi to repay the loan of shares transferred to the Former Wife as part of her equitable distribution equalizing payment in the third tranche. See **Exhibit "H"**, GKP Public Announcement dated April 22, 2013.

    10.    Upon information and belief, the parties have a duty of candor towards the tribunal including re-opening the evidence and correcting the record if necessary to do justice to the parties, this is especially true since the Former Wife

is seeking to incarcerate the Husband for failing to pay the $3,850,000 in escrow and is relying, in part, on her allegation that there are substantial funds unaccounted for based on the FBAR's for 2012 and 2013 and/or that the Former Husband violated the Third Amended Asset Injunction by transferring shares to the Former Wife as required and contemplated by the parties' PSA and Third Amended Asset Injunction.

10. While there was no evidence introduced that there are any missing, undisclosed or unlawfully traded assets, given the Former Wife's consistent desire and argument to shift the burden of proof to the Former Husband by simply alleging that he has no credibility and his testimony should be disregarded by the Court, the Former Husband is left with the inescapable task of disproving every allegation and argument made by the Former Wife, even when the facts are both to the contrary and already known to the Former Wife.

11. The undersigned attempted to amicably resolve the issues contained in this motion with opposing counsel, prior to filing this motion, without success and instead, counsel for Former Wife would prefer to leave the Court with a factually incorrect argument.

**WHEREFORE**, the Former Husband, Todd Kozel, hereby requests the relief requested in this Motion, including but not limited to re-opening the matter to present limited evidence to the Court consistent with the facts contained in this Verified Motion and/or any other relief that is just and proper under the circumstances.

_____
TODD KOZEL

STATE OF NEW YORK
COUNTY OF NEW YORK

**BEFORE ME**, the undersigned Notary Public of Florida, personally appeared TODD KOZEL, who, after being duly sworn, says that the information or allegations contained in the above, *Verified Motion to Supplement Record of Evidentiary Hearing on April 5 & 6, 2013*, are complete and true.

**SWORN TO AND SUBSCRIBED BEFORE ME** this 15 day of April, 2016.

_____
Notary Public-State of New York

Ali C Gagliano
Print, type or stamp commissioned name of Notary Public

[Check one only]
___ Personally Known or
_✓_ Produced Identification
Type of Identification Produced Florida Drivers License

ALI G GAGLIANO
Notary Public – State of New York
NO. 01GA6274852
Qualified in Kings County
My Commission Expires 1/19/17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via e-service this 15th day of April, 2016 to: **JEFFREY D. FISHER, ESQ.**, Fisher & Bendeck, P.L., 501 S. Flagler Drive, Suite 450, West Palm Beach, FL 33401; **FRED A. SCHWARTZ, ESQ.**, Kopelowitz Ostrow Ferguson Weiselberg, 200 E. Palmetto Park Road, Suite 103, Boca Raton, FL 33432; **ANDREW C. HALL, ESQ.**, Hall Lamb & Hall, P.A., 2665 South Bayshore Drive, PH 1, Miami, FL 33133; **RYAN OWEN, ESQ.**, Adams and Reese LLP, 1515 Ringling Boulevard, Suite 700, Sarasota, FL 34236.

**HOLLAND & KNIGHT LLP**
Jose Casal, Esq., Florida Bar No.: 767522
701 Brickell Avenue
Suite 3300
Miami, FL 33131

*FOSTER-MORALES SOCKEL-STONE, LLC*
Attorneys for Respondent/Former Husband
Museum Tower – PH II
150 West Flagler Street
Miami, FL 33130
Telephone: 305.577.0090
Fax: 305.577.4551
Primary E-mail: service@fostermorales.com

By: _____
DORI FOSTER-MORALES
Florida Bar No.: 849332